GEOFFREY A. HANSEN
Acting Federal Public Defender
Northern District of California
JEROME E. MATTHEWS
Assistant Federal Public Defender
13th Floor Federal Building - Suite 1350N
1301 Clay Street
Oakland, CA 94612
Telephone:   (510) 637-3500
Facsimile:   (510) 637-3507
Email:       Jerome_Matthews@fd.org

Counsel for Defendant Chaidez

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>JUAN CHAIDEZ,<br><br>　　　　Defendant. | Case No.: CR 21–00377 JSW<br><br>**JUAN CHAIDEZ'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE**<br><br>**Court:**　　　Courtroom 5<br>**Hearing Date:**　January 18, 2021<br>**Hearing Time:**　9:30 a.m. |

**PRELIMINARY STATEMENT**

　　On September 2, 2020, Juan Chaidez was shot seven times. He sustained severe injuries and intestinal damage that required multiple surgeries, including a colostomy. Following his release from the hospital he justifiably feared for his life and kept a gun handy. That gun and ammunition was recovered during his arrest on October 20, 2020.

　　Mr Chaidez has from the outset accepted responsibility for his conduct, and is prepared to enter a guilty plea to and be sentenced for being a felon in possession of ammunition. He has expressed several times his desire to leave the Bay Area and move to another state to start his life anew. Based

upon conversations with those who know him, including law enforcement personnel, Mr Chaidez has the potential to turn his life around given the right environment and support. He respectfully requests the opportunity to demonstrate that he is committed to doing so and asks the Court to sentence him to 36 months.

## BACKGROUND

The PSR accurately describes the events that led to Mr Chaidez's arrest, but some clarification is in order. First, although Mr Chaidez was arrested by members of the U.S. Marshals Fugitive Task Force, he was not a fugitive from justice. To the contrary, after he was shot and confined to the hospital, he was in constant contact with his parole and probation officers, as well as Oakland Police Department detectives who were investigating the case. Declaration of Federal Public Defender Investigator Madeline Larsen ("Larsen Decl."), ¶¶ 3, 6. He maintained contact following his release from the hospital, not knowing that a warrant had been issued for his arrest. *Id.* Indeed, it was his parole officer that directed U.S. Marshals to the hotel in which Mr Chaidez was staying at the time he was apprehended. PSR, ¶ 6.

After his arrest, Mr Chaidez remained in state custody. A federal complaint was sworn on February 19, 2021. Docket # 1. Mr Chaidez went into federal custody on July 12, 2021, and made his initial appearance in federal court two days later. PSR, ¶ 4.

## COMENTS TO THE PRESENTENCE REPORT

Mr Chaidez agrees with the probation officer's criminal history and guidelines calculations, and has no further legal or factual objections.

## SENTENCING RECOMMENDATION

Criminal "punishment should fit the offender and not merely the crime." *Williams v. New York*, 337 U.S. 241, 247 (1949). That requires "the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall v. United States*, 552 U.S. 38, 52 (2007) (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996) (quotations omitted)).

Ultimately, the "overarching statutory charge for a district court is to 'impose a sentence sufficient but not greater than necessary'" to reflect the factors detailed in 18 U.S.C. § 3553(a).

*United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (*en banc*) (quoting 18 U.S.C. § 3553(a)). The § 3553(a) factors assist the Court in fulfilling its mandate to make "an individualized assessment of a particular defendant's culpability rather than a mechanistic application of a given sentence to a given category of crime." *United States v. Barker*, 771 F.2d 1362, 1365 (9th Cir. 1985).

Mr Chaidez appreciates the probation officer's recommendation for a downward variance. He respectfully asks the Court to consider a modest further variance in light of the passage of time between the date of the offense conduct and the date on which he was taken into federal custody.

### I. Mr Chaidez Lost the Opportunity to Serve Concurrent Time on his State and Federal Sentences

Mr Chaidez was arrested by a joint federal and state law enforcement task force on October 20, 2020. PSR, ¶ 6. Although his arrest for was an unrelated state offense, he was at the time in possession of the ammunition that is the basis for the present case. He served nearly nine months in state custody until he was released to the federal warrant on July 12, 2021. The federal Bureau of Prisons, however, will not give Mr Chaidez credit against his federal sentence for the time he spent in state custody, a purely formalistic result given that Mr Chaidez was in Santa Rita jail the entire time.

The Ninth Circuit has recognized this potential unfairness and given the district courts the tools to address it. In *United States v. Sanchez-Rodriguez*, 161 F.3d 556 (9th Cir. 1998), defendant was sentenced to three years in prison on a drug case. Seven months later, the federal government charged him with illegal reentry in violation of 8 U.S.C. § 1326. The district court granted a downward departure based in part on the defendant not having had the opportunity to serve his state sentence concurrently with his federal sentence. In an en banc opinion, the Ninth Circuit affirmed and overruled prior authority holding that such a lost opportunity was not grounds for a downward departure. 161 F.3d at 563-64.

Just so here. The conduct underlying this offense took place on October 20, 2020, but Mr Chaidez was not taken into federal custody until July 12, 2020, nearly nine months later. Under *Sanchez-Rodriguez* this Court may grant a variance to compensate Mr Chaidez for the lost opportunity to have his state and federal sentences run concurrently.

## II. Mr Chaidez's History and Characteristics Justify a 36-Month Sentence

Very little of Mr Chaidez's upbringing augured well for success. His father was incarcerated and uninvolved, and Mr Chaidez knows very little about him. His mother had a lifelong drug addiction, numerous health problems, and died of heart failure. PSR, ¶ 42. His neighborhood—the "Dirty 30's" in street parlance—is known as a violent, high-crime area where shootings are frequent.

These environmental factors have had a predictable and long-lasting effect. He was diagnosed with ADHD at a young age and prescribed medication. PSR, ¶ 53. By the time he turned eleven, Child Protective Services had removed him from his mother's care due to her addiction and involvement in an abusive relationship. While he was living in a group home, his mother's then boyfriend attempted to murder her. PSR, ¶ 43. He suffers from PTSD and has sought, unsuccessfully, mental health treatment while in custody. PSR, ¶ 52. He has also self-medicated with heroin and methamphetamine. PSR, ¶¶ 56, 57.

Despite the challenges he has faced, Mr Chaidez has the potential to turn his life around. Interestingly, his parole agent, his county probation officer, and even a housing unit Deputy Sheriff at Santa Rita jail all concur. Larsen Decl., ¶¶ 3 – 6. Most telling, perhaps, is Deputy Sheriff Greg McLean's observation that Mr Chaidez is a compliant, non-disruptive inmate who was "just dealt a bad hand" early in life, but still "has a real chance at being rehabilitated." *Id.* at ¶ 4.

Equally important, Mr Chaidez realizes that living in the East Bay has caused him nothing but trouble. He has stated that he would like to move to Georgia where he has a brother, Robert Stokes, who works in information technology. PSR, ¶¶ 41, 42.

The foregoing history and characteristics indicate that Mr Chaidez is serious about turning his life around and has the potential to do so.

## III. A 36-Month Sentence is Just Punishment

It is a central tenet of criminal law that a defendant who has suffered a disadvantaged background is less culpable than one without the excuse. *California v. Brown*, 479 U.S. 538, 545 (1987) (O'Connor, J., concurring). The Ninth Circuit has noted with approval that variances based on lack of youthful guidance are wholly appropriate. *See Landrigan v. Schriro*, 441 F.3d 638, 650 (9th Cir. 2006); *United States v. Floyd*, 945 F.2d 1096 (9th Cir. 1991) (affirming departure in drug case

from 30 years to 17 years because of lack of guidance as a youth).

The Supreme Court concurs. *See Penry v. Lynaugh*, 492 U.S. 302, 319 (1989) (in criminal cases there is a belief "long held by this society, that the defendants who commit criminal acts that are attributable to a disadvantaged background . . . may be less culpable than defendants who have no such excuse"). As the late Justice Rehnquist once noted, "It requires no citation of authority to assert that children who are abused in their youth generally face extraordinary problems developing into responsible, productive citizens." *Santosky v. Kramer*, 455 U.S. 745, 789 (1982) (Rehnquist, J., with Burger, C.J., and White and O'Connor, JJ., dissenting).

This record is replete with instances of abandonment, generational addiction, violence and mental health issues. Section 3553(a) directs the Court to consider these facts to determine what is the least amount of time necessary to achieve the goals of sentencing. It is difficult to conjure why a sentence longer than 36 months would be necessary.

The requested sentence is also an incremental increase beyond those previously imposed, and should provide sufficient deterrence. Given that some of Mr Chaidez's longer sentences have resulted in "paper commitments" or early release to PRCS, a 36 month federal sentence would be the longest Mr Chaidez will have served.[1]

### IV. The Conditions of Mr Chaidez's Custody, Including his Health Problems, Have Been Harsher Than Normal

The Court is well aware of the disruptions the COVID-19 pandemic has caused to its own procedures and those at Santa Rita jail, including the absence of many activities designed to allow inmates to use their time in custody productively. Prior to the COVID-19 pandemic, classes through "Five Keys" covering a variety of subject matter and services were widely available. For a time, , ices programs were suspended pending an Alameda County Public Health determination that the jail could resume normal activities."[2]

---

[1] *E.g.*, PSR ¶¶ 26, 28, 30.

[2] Excerpted from an e-mail from Alameda County Sheriff Captain Mattison to the Office of the Federal Public Defender. To defense counsel's knowledge, there have not been further communications from the jail regarding whether these programs have been fully restored.

JUAN CHAIDEZ'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE
*CHAIDEZ*, CR 21–00377 JSW

Although self-instruction is still available, it is unknown when normal activities will fully resume. The salient point, however, is that conditions of confinement during the course of the pandemic have been much more difficult and onerous than normal.

The foregoing difficulties have been compounded by Mr Chaidez's health problems. As previously stated, Mr Chaidez underwent a colostomy procedure to address the intestinal and related damage resulting from his being shot. He sought medical care at Santa Rita jail when he experienced severe pain, but reportedly his complaints were ignored. He ultimately was hospitalized after he developed colitis and a high fever. PSR, ¶ 50. He is still awaiting surgery.

## V.  The Totality of the Circumstances Justify a Sentence of 36 Months

A number of factors militate in favor of leniency in this case, each for a discrete reason. But individual reasons do not limit the Court's ability to consider the totality of the circumstances. Even prior to *Booker*, the district court could base its sentence on an aggregation of factors, each of which might individually have been insufficient to justify departure, or now, a variance. *United States v. Cook*, 938 F.2d 149, 153 (9th Cir. 1991). In *Cook* the court explained that "[t]here was no reason to be so literal-minded as to hold that a combination of factors cannot together constitute a 'mitigating circumstance.'" *Id.* at 153. When a combination of factors is posited as a basis for a downward departure, the question becomes whether in totality they present a uniquely mitigating set of circumstances. *Cook* elaborated further on this principle, noting that factors that appear insufficient in isolation can present a compelling mosaic when viewed together: *Id.* at 153 (emphasis added); s*ee also United States v. Colace*, 126 F.3d 1229, 1231 n.2 (9th Cir. 1997) (considering non-qualifying factors by aggregating into a totality of circumstances analysis).

In the aggregate, there is a sufficient factual basis to justify a sentence of 36 months. A troubled childhood, a life-altering event, and, perhaps most important, the awareness that he needs to abandon his lifestyle have all shaped Mr Chaidez's present outlook and goals. It is both noteworthy and laudable that he has shared his views with those persons in law enforcement responsible for supervising him; it is compelling that they have seen his potential.

**CONCLUSION**

For the reasons stated, Juan Chaidez respectfully requests that the Court impose a sentence of 36 months and three years of supervised release.

Dated:  January 11, 2022

Respectfully submitted,

GEOFFREY A. HANSEN
Acting Federal Public Defender

              /S
JEROME E. MATTHEWS
Assistant Federal Public Defender