UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JUAN JESUS CHAIDEZ,<br><br>Defendant. | Case No. 21-cr-00377-JSW-1<br><br>**AMENDED ORDER FOLLOWING EVIDENTIARY HEARING**[1] |

On January 9, 2025 and January 13, 2025, the parties appeared before the Court for an evidentiary hearing to determine whether Defendant Juan Jesus Chaidez ("Mr. Chaidez") violated his conditions of supervised release by: (1) assaulting his ex-girlfriend in the early hours of December 27, 2023 in violation of California Penal Code § 273.5(a); (2) changing his address without notifying his probation officer, Salvador Tinoco ("Officer Tinoco"), in writing within 72 hours of the change; (3) knowingly leaving the District without first obtaining permission from Mr. Tinoco; (4) failing to follow the instructions of Mr. Tinoco by not reporting to a meeting scheduled for January 10, 2024; (5) failing to participate in a program of drug treatment and testing; and (6) being in possession of a stolen vehicle, in violation of California Penal Code § 496D(a). (*See* Dkt. No. 37, Form 12.)

At the hearing, the Government presented testimony from Officer Tinoco, Oakland Police Department Officer William Pritchard, and Oakland Police Department Officer Sheldon Sumter. The complaining witness in Charge One was served with subpoenas but did not appear. Mr. Chaidez objected to the Court considering hearsay evidence, and the Court conditionally admitted

---

[1] The Court issues this Amended Order because it erroneously cited to exhibits it had excluded during the hearing. It also corrects a typographical error in footnote 3.

much of the Government's evidence on each charge over that continuing objection.[2]  At the conclusion of the hearing, the Court heard argument from the parties and ruled that it found the Government proved Charges One through Five by a preponderance of the evidence.  The Court reserved ruling on Charge Six.  The Court now issues this written Order to address the hearsay objections and to set forth the basis of its rulings on the charges.

A.      **Applicable Legal Standards.**

The Government bears the burden of showing by a preponderance of the evidence that Mr. Chaidez violated his conditions of release.  In turn, Mr. Chaidez has a due process right to confront adverse witnesses, unless the Government shows good cause for not producing them.  *Morrissey v. Brewer*, 408 U.S. 471, 487 (1972); *see also* Fed. R. Crim. P. 32.1(b)(2)(C).  To resolve Mr. Chaidez's hearsay objections, the Court engages in a balancing test that weighs his interest in the "constitutionally guaranteed right to confrontation against the Government's good cause for denying it."  *United States v. Comito*, 177 F.3d 1166, 1170 (9th Cir. 1999).  This balancing test applies to testimonial and nontestimonial statements and applies to evidence subject to a hearsay exceptions.  *Valdivia v. Schwarzenegger*, 599 F.3d 984, 990-91 (9th Cir. 2010).  The Court balances the parties' respective interests in light of the specific circumstances presented.  *United States v. Martin*, 984 F.2d 308, 311 (9th Cir. 1993).  If Mr. Chaidez's interest in confrontation is high, the Government's showing of good cause should be "significant" in order to outweigh that interest.  *Id.* at 312-13.

On Mr. Chaidez's side of the scale, the weight the Court gives to the right to confrontation depends on "the importance of the evidence to the court's ultimate finding and the nature of the facts to be proven by the hearsay evidence."  *Comito*, 177 F.3d at 1171.  The Court also considers Mr. Chaidez's opportunity to refute the evidence and the nature of the consequences its use has on

---

[2]  When the Court first scheduled the evidentiary hearing, the Government stated it intended to rely on hearsay to prove Charge One.  Following briefing, the Court issued an Order applying the balancing test discussed in Section A below and ruling that without a showing of good cause, it would not admit hearsay statements from the complaining witness.  (*See* Dkt. No. 65, Order Regarding Use of Hearsay Evidence  ("Order re Hearsay").)  At the hearing, Mr. Chaidez also objected to hearsay evidence used to prove Charges Two through Six.

2

Mr. Chaidez. *Martin*, 984 F.2d at 311-12. On the Government's side of the scale, the Court considers "the difficulty and expense of procuring witnesses … and the traditional indicia of reliability borne by the evidence." *Id.* at 312 (cleaned up).

**B.     The Government Has Met Its Burden to Prove Charge One.**

There is no serious dispute that without hearsay evidence, the Government would not be able to prove Charge One. Mr. Chaidez was able to cross examine Officer Tinoco and Officer Pritchard but did not have the opportunity to question the complaining witness directly, in person or remotely. Charge One is considered a Grade A violation, because a violation of Penal Code section 273.5(a) is punishable by more than one year. Cal. Pen. Code § 273.5(a); U.S.S.G. § 7B1.1(a)(1), p.s. The Guidelines range for a custodial sentence on Charge One is 33 to 41 months. Absent a finding of guilt on Charges One or Six, the Guidelines range for a custodial sentence would be 8 to 14 months. *See* U.S.S.G. § 7B1.1(b), p.s. ("Where there is more than one violation of the conditions of supervision, …, the grade of the violation is determined by the violation having the most serious grade."). The Court concludes Mr. Chaidez's due process interest in confronting the complaining witness was high.

In *Comito*, the Ninth Circuit determined the government failed to show good cause because it did not "offer evidence of any kind" regarding the witness's fear of the defendant and did not ask the probation officer who recounted her statements about his efforts to serve the witness. 177 F.3d at 1172. Moreover, there was evidence that the complaining witness continued to visit the defendant in jail as well as other evidence undermining her claim that she was afraid to testify. *Id.*; *see also United States v. Avila*, 791 Fed. Appx. 591, 594 (9th Cir. 2017) (government made no effort to secure complaining witness's presence at hearing). Here, however, the Government, through Mr. Tinoco, was able to serve the complaining witness with a subpoena. *See United States v. Taylor*, 804 Fed. Appx. 731, 732 (9th Cir. 2020) (showing of good cause supported by service of subpoena on complaining witness).

The Court has applied the *Comito* balancing test to the complaining witness's hearsay statements about her fear of Mr. Chaidez and overrules his objections to those statements. *See Valdivia,* 599 F.3d at 992-93. Unlike in *Comito,* there is no evidence that would undermine her

3

statements, which are corroborated by her efforts to obtain a restraining order against Mr. Chaidez. The fact that Mr. Tinoco was not able to obtain a current address also supports an inference she was afraid of Mr. Chaidez. (*See* Exs. 12, 33-37, 39, 41.)[3] Finally, although the letters Mr. Chaidez wrote to the complaining witness do not contain explicit threats, the number of letters written in a short period of time and the tone of those letters demonstrate Mr. Chaidez remained fixated on their relationship.[4] The Court concludes that evidence also corroborates the complaining witness's fear of Mr. Chaidez.[5]

The primary evidence used to prove Charge One was the 911 call and the video footage from Officer Pritchard's BWC. The Court concludes the complaining witness's statements qualify as excited utterances under Federal Rule of Evidence 803(2). (*See* Order on Hearsay at 2:4-10.) That evidence bears a greater indicia of reliability than the unsworn statements to Officer Tinoco about the assault.[6] *See, e.g., Valdivia*, 599 F.3d at 990. Accordingly, the Court concludes the Government's showing of good cause is sufficient to outweigh Mr. Chaidez's interest in confronting the complaining witness. The Court overrules Mr. Chaidez's objections to the 911 call and the video footage from Officer Pritchard's BWC.[7]

In order to prove a violation of Section 273.5(a), the Government is required to prove by a preponderance of the evidence that Mr. Chaidez: "inflicted bodily injury upon his … cohabitant or

---

[3] The Court overrules Mr. Chaidez's objections to Exhibits 33-37, 39, and 41. The Court overrules in part Mr. Chaidez's objection to Exhibit 12 and has only considered the first two paragraphs of Officer Tinoco's chronological note. The petitions for the TROs (Exhibits 39 and 41) do contain hearsay statements about the assault, but unlike her statements to Officer Tinoco and the responding officers, the complaining witness signed them under penalty of perjury. Her statements in those petitions are consistent with the events as she described them in the 911 call and in the video from Officer Pritchard's BWC.

[4] Mr. Chaidez did not object to Exhibits 27-32.

[5] Officer Tinoco testified that when the complaining witness asked if the Court would issue a warrant if she did not appear, he answered he did not think that was likely. The Court has taken that into consideration but concludes it does not significantly undermine the Government's showing of good cause.

[6] Because the Court can resolve Charge One without relying on the complaining witness's statements to Officer Tinoco, it has not relied on them.

[7] The Court admits Exhibit 5.

someone with whom he previously had a … dating relationship" and that "[t]he bodily injury resulted in a traumatic condition." See CALJIC 9.35. The term "traumatic condition means a condition of the body, such as a wound, or external or internal injury, including, but not limited to, injury as a result of strangulation or suffocation, whether of a minor or serious nature, caused by a physical force." Cal. Pen. Code § 273.5(d). Mr. Chaidez's relationship with the victim is established by her statements, Mr. Tinoco's knowledge that the two had lived together, and by Mr. Chaidez's letters to the complaining witness. In addition, her statements on the video and her appearance on the video establish that Mr. Chaidez inflicted bodily injury on her, including but not limited to a large cut over her eye and a bloody nose. Finally, although the complaining witness admitted she did hit Mr. Chaidez, the Court finds the totality of the evidence demonstrates that he acted willfully. See, e.g., People v. Ibarra, 156 Cal. App. 4th 1174, 1197 (2007) ("The word willfully implies that a person not only has a purpose or willingness to commit the act but also knows what he is doing, intends to do what he is doing, and is a free agent.") (cleaned up); CALJIC 9.35 ("The word 'willfully' as used in this instruction means a purpose or willingness to commit the act that results in corporal injury."). Accordingly, the Court concludes that the Government proved by a preponderance of the evidence that Mr. Chaidez violated his conditions of supervised release as alleged in Charge One.

C.  **The Government Has Met Its Burden to Prove Charges Two through Five.**

The Government's case on Charges Two through Five was based on Officer Tinoco's testimony. He testified that he personally reviewed the conditions of supervised release with Mr. Chaidez. As discussed above, he testified that he knew Mr. Chaidez and the complaining witness had been living together in her apartment. Officer Tinoco also testified that Mr. Chaidez had not provided him with a new address. For the reasons set forth in Section B, the Court concludes the Government has shown good cause for not calling the complaining witness and overrules Mr. Chaidez's objections to her statements. Mr. Chaidez was able to cross-examine Officer Tinoco, who admitted that he did not attempt to confirm the complaining witness's statements. The Court also considers the existence of the restraining orders, which makes it more probable than not that Mr. Chaidez had changed addresses without notifying Mr. Tinoco. The Court concludes the

Government proved by a preponderance of the evidence that Mr. Chaidez knowingly violated his conditions of release by changing addresses without notifying Mr. Tinoco within 72 hours, as alleged in Charge Two.

Officer Tinoco also testified that he received a text from Mr. Chaidez on January 3, 2024, which he copied into a chronological report. (Ex. 20.)[8] In his text, Mr. Chaidez admitted that he was in the Lake Tahoe area, which is not within the Northern District. (*Id.*) Mr. Tinoco also testified he had not given Mr. Chaidez permission to travel. The Court concludes that the Government proved by a preponderance of the evidence that Mr. Chaidez knowingly violated his conditions of release by leaving the Northern District without first obtaining permission from Officer Tinoco, as alleged in Charge Three.

Officer Tinoco also testified that he directed Mr. Chaidez to report to the Probation Office on January 10, 2024. (*See* Ex. 20.) Mr. Chaidez stated he would be at the meeting, but Officer Tinoco testified he did not show up. The Court concludes the Government proved by a preponderance of the evidence that Mr. Chaidez knowingly violated his conditions of supervised release by failing to follow Officer's Tinoco's instructions, as alleged in Charge Four.

Officer Tinoco also testified that he received reports from Dolan Mental Health that Mr. Chaidez failed to report for drug testing on December 11, 2023, January 2, 2024, January 11, 2024, and January 16, 2024, which he documented by placing them in Mr. Chaidez's chronological file. (Exs. 17, 19, 22, 23.) Officer Tinoco testified that he did not do any additional investigation about these reports and had intended to discuss the issue with Mr. Chaidez at the appointment scheduled for January 10. The Government did not present a witness from Dolan Mental Health.

Although the hearsay evidence is central to the Court's finding on this charge, the consequences are not as severe for Mr. Chaidez. The Government did not explain why it did not call a representative from Dolan Mental Health but relied on business records, a more reliable form of hearsay. The Court concludes that the *Comito* balancing test weighs in favor of admitting

---

[8] The Court overrules Mr. Chaidez's objections to Exhibit 20 and admits it.

the evidence, and the Court overrules Mr. Chaidez's hearsay objections. Mr. Chaidez missed at least four drug testing appointments, including an appointment the day after he did not appear for his appointment with Officer Tinoco. Accordingly, the Court concludes the Government has met its burden to show Mr. Chaidez knowingly violated his conditions of supervised release by failing to participate in a program for testing and treatment of drug abuse, as alleged in Charge Five.

### D.     The Government Did Not Meet Its Burden to Prove Charge Six.

The Government's case for Charge Six was based on testimony from Officer Sumpter, who testified that he was on patrol in an area known to him for being a hot spot for stolen vehicles. Officer Sumpter testified he observed Mr. Chaidez in the driver's seat of a blue Chevrolet Cruze (the "vehicle"), and that when Mr. Chaidez quickly exited the vehicle and walked away it seemed suspicious to him. He testified that he asked his partner to check the vehicle's license plate, and they learned the vehicle had been reported stolen earlier that day. They turned around and as they approached the vehicle, they saw Mr. Chaidez leaning into the passenger side of the vehicle. Officer Sumpter testified that Mr. Chaidez exited, closed the door, and walked casually away from the vehicle. Officer Sumter approached him and detained him without incident. Although it is not in the police report, Officer Sumpter testified that Mr. Chaidez possessed the keys to the vehicle.

In order to establish Mr. Chaidez violated Section 496D(a), the Government must show "(1) the property was stolen; (2) the defendant knew the property was stolen (hereafter the knowledge element); and, (3) the defendant had possession of the stolen property." *People v. Russell*, 144 Cal. App. 4th 1415, 1425 (2006), *disapproved of on other grounds People v. Covarrubias*, 1 Cal. 5th 838, 874 n.14 (2016). The Court concludes that Officer Sumpter's testimony is sufficient to establish the first and third elements. However, even under the preponderance of the evidence standard, the Court concludes the Government failed to show Mr. Chaidez knew the vehicle was stolen. *See Russell*, 144 Cal. App. 4th at 1425 (knowledge element requires specific intent). Mr. Chaidez had the keys to the vehicle, and there was no testimony about whether he and the complaining witness on this charge knew each other. Accordingly, the Court concludes the Government has not met its burden to show Mr. Chaidez violated his conditions of supervised release by possessing a stolen vehicle, as alleged in Charge Six.

The parties shall appear as scheduled for disposition on February 25, 2025 at 1:00 p.m.

**IT IS SO ORDERED**.

Dated: February 11, 2025

_____
JEFFREY S. WHITE
United States District Judge